THE STATE, EX REL. BOLLER, *v.* PEFFLY, CLERK.

(No. 1886—Decided April 24, 1946.)

*Mr. M. E. Norris,* for relatrix.

*Mr. M. H. Heck,* prosecuting attorney, and *Mr. M. J. Gilbert,* for respondent.

WISEMAN, J. This is an action originating in this court, wherein Mabel Boller, relatrix, prays that a writ of mandamus issue against William A. Peffly, clerk of the Common Pleas Court, Montgomery county, Ohio, respondent, requiring him to pay to the relatrix $1,000 which she had furnished as a cash bond in the case of *State* v. *Hauk.*

The record in this case shows that Ralph Skilken, attorney for Idabelle Hauk, posted a $1,000 cash bond in the criminal case herein referred to with respondent; that no information was given to the clerk at the time the bond was posted that the money was fur-

nished by the relatrix, Mabel Boller; that the clerk, believing the money was furnished by Ralph Skilken, made an entry to that effect and gave a receipt to Ralph Skilken for $1,000 cash bond; and that the criminal action was later disposed of and on July 25, 1945, a judge of the Common Pleas Court signed the following entry:

"It appearing to the court that the defendant has been at liberty on bond, and further appearing that one thousand (1000) dollars cash bond, was furnished by Mabel Boller, sister of the defendant, it further appearing that sentence has now been passed and said bond is no longer in effect. It is ordered that the Clerk of Courts of Montgomery county refund this sum to Mabel Boller."

The record further shows that the relatrix made repeated demands on the clerk of courts for payment of the sum of $1,000 which was refused on the ground that the records in the clerk's office indicated that the bond had been posted in the name of Ralph Skilken and not in the name of Mabel Boller. Thereupon a controversy arose between counsel for the relatrix, the respondent and Ralph Skilken, who conferred with a judge of the Common Pleas Court in an effort to settle the difficulty. On August 2, 1945, Ralph Skilken filed a motion to vacate and set aside the order made on July 25, 1945. This motion, which was submitted on brief, was overruled on October 6, 1945. However, in the meantime on August 28, 1945, Ralph Skilken began an action in the Municipal Court of Dayton against Mabel Boller to recover an amount of money alleged to be due him for legal services and attached the fund in possession of the respondent. The petition in mandamus was filed in this court on November 29, 1945. There is no dispute relative to the ownership of this fund, it being conceded that the bond money deposited

with the respondent was furnished by Mabel Boller.

Under the facts in this case, is the relatrix entitled to the extraordinary remedy prayed for? Section 12283, General Code, provides:

"Mandamus is a writ issued, in the name of the state, to an inferior tribunal, a corporation, board, or person, commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station."

Does the respondent owe a duty to the relatrix to pay to her $1,000 as he was ordered to do under the court order entered on July 25, 1945? It is well settled that mandamus lies to enforce the performance of a ministerial act or duty. The payment of the money by the clerk would be a ministerial act. Mandamus is a summary and extraordinary writ issued in the sound discretion of the court. However, before the court will issue the writ, the relatrix's right to the relief sought must be clear. Plain dereliction of duty must be established against the respondent before the writ will be awarded. 25 Ohio Jurisprudence, 997, Section 23.

Does a clear legal duty rest upon this respondent to pay the $1,000 to the relatrix? We do not think so. We are not required to pass upon the merits of the action in the Municipal Court in which the attachment was issued; nor is this court required to determine whether the relatrix would have been entitled to a remedy had she filed her mandamus action prior to the date the fund was attached. The jurisdiction of the Municipal Court of Dayton to issue the order of attachment is not questioned. If the fund in the hands of the respondent was subject to attachment, such fund must be held under the order of attachment and respondent would be under no legal duty to pay the money over. An issue is raised as to whether the fund in the pos-

session of the respondent at the time it was attached was *in custodia legis*. If the fund was *in custodia legis* this court would be required to hold that it was not subject to attachment. In that event, the order of the Municipal Court attaching the fund would have no legal effect and the clerk would owe a duty to pay the money to the relatrix under the order of the Common Pleas Court.

So long as this fund was held on deposit as a cash bond without a court order ordering it paid to the relatrix, the fund was *in custodia legis*. Did this fund cease to be *in custodia legis* after the Common Pleas Court issued its order under date of July 25, 1945, in which it found that "sentence has now been passed and said bond is no longer in effect * * * [and] ordered that the clerk of courts of Montgomery county, refund this sum to Mabel Boller"?

In 6 Corpus Juris, 210, Section 391, the text is as follows:

"Where property has been taken by judicial process and is held by the court or its officers for a specific purpose, or until the termination of a suit, it is clear that its subsequent attachment would interfere with the jurisdiction and administration of justice of the former court, and it is, therefore, not allowable. *But after the fulfillment of the specific purpose for which the fund or property is held, the writ may be enforced against it, or any surplus remaining.*" (Italics ours.) See cases cited.

In 7 Corpus Juris Secundum, 258, Section 88, the rule is stated as follows:

"As a general rule, property that is *in custodia legis* is not subject to attachment prior to fulfillment of the purpose for which it is held."

On page 259 the text is as follows:

"After the fulfillment of the specific purpose for

which the fund or property is held, the writ may be enforced against it, or any surplus remaining, unless the court otherwise directs."

In 4 American Jurisprudence, 800, Section 393, the law applicable to this situation is stated as follows:

"The view is held by many courts that after the person who is entitled to a fund has been ascertained, together with the amount to which he is entitled, and an order has been made for payment, the custodian then becomes the agent of such party and may thereafter be garnished, or the fund in his custody attached. There are, however, many decisions holding to the contrary."

On page 802, Section 398 of the same work, this language is found:

"The determination of the right of the defendant in a deposit in the custody of an officer of the court generally makes the officer his debtor and the deposit attachable or garnishable by the plaintiff, at least where the court has ordered payment to him out of the deposit."

In 13 L. R. A. (N. S.), 758, there appears a note in which this proposition of law is discussed. It is stated:

"In the absence of express statutory authority therefor, it is settled law that, in general, funds *in custodia legis* are not subject to either attachment or garnishment. It is asserted by many courts and text writers, however, that *after the person who is entitled to a fund has been ascertained, together with the amount to which he is entitled, and an order has been made for payment, the custodian then becomes the agent of such party, and may thereafter be garnished, or the fund in his custody attached.*" (Italics ours.)

The courts have generally held that, after the purpose for which the fund has been held has been fulfilled and an order has been made determining who is

entitled to the fund and ordering payment thereof, the fund ceases to be *in custodia legis*. Thereafter the officer holding the fund holds it as debtor of the person to whom it is payable. The purposes of the law having been fulfilled, the officer thereafter is liable to the owner of the fund.

We find no reported case in Ohio in which this precise question has been decided. However, there is a line of authorities touching on situations similar to the one presented in this case. The right to attach funds in the hands of an administrator or an executor, although not public officials, bears a close analogy to the right to attach funds in the hands of the respondent. The leading case in Ohio on this question is *Orlopp* v. *Schueller,* 72 Ohio St., 41, 73 N. E., 1012, 106 Am. St. Rep., 583, in which it was held:

"Property or money held by the executor or administrator of an estate in his representative capacity, cannot be reached by attachment or garnishee process in an action against the heir or legatee *before an order of distribution has been made.*" (Italics ours.)

And the court on page 58 said:

"So long as the estate remains unsettled, or at least until order of distribution is made, the property held by an executor or administrator as such, is in the custody of the law and does not vest in, or become the property of the heir or legatee. Until such time the executor or administrator is not the *debtor* of the heir or legatee, nor is it certain that he is the custodian of any property belonging to him."

Taking up the cases chronologically, we next consider the case of *National Radiator Co.* v. *Hobday,* 17 C. C. (N. S.), 489, 32 C. D., 244, in which it was held:

"An assignee or trustee in insolvency may be garnisheed by a creditor of a distributee of the insolvent estate, *after order of distribution is made.*" (Italics

ours.) The court approved and followed the case of *Orlopp* v. *Schueller, supra.*

In *Remelin* v. *Butterworth,* 20 Ohio App., 356, 152 N. E., 193, it was held:

"Funds held by clerk of Court of Common Pleas on interpleader cannot be garnisheed by creditor of claimant to such funds prior to judgment finding such claimant entitled to them in view of Section 11829, General Code."

And, on page 360, the court said:

"Under the facts of this case, as shown by the answer of the garnishee clerk, as well as by the record at the time the attachment was levied and process of garnishment issued, Margaret Hall Remelin had no interest in this fund. *The clerk was in no wise her debtor. The court had not, at that time, determined to whom the fund belonged.* The clerk was not at that time custodian of any property belonging to Margaret Hall Remelin." (Italics ours.)

In *City Loan & Savings Co.* v. *Guthridge,* 61 Ohio App., 202, 22 N. E. (2d), 573 (Judge Hornbeck, Second Appellate District), it was held:

"Money in the hands of an executor, ready to be distributed to a legatee, is 'money due' the legatee within the meaning of that term as used in Section 11738, General Code, and not exempt from garnishment based on a judgment against such legatee." The court discussed with approval the case of *Orlopp* v. *Schueller, supra,* and on page 206 said:

"This opinion and others are grounded upon the proposition that *until there is an order of distribution the funds of the estate are as though in custodia legis;* that it can not be determined until then that prior claims will not take precedence over a bequest of money." (Italics ours.) The court, on page 207, quoted from a note which is found in 59 A. L. R., 766, as follows:

"But, after settlement and a decree of distribution, garnishment would lie, because then the representative ceased to hold as an officer of the law and in his representative capacity, and became a personal debtor of the persons entitled to payment of a debt, or to a legacy or distributive share."

In *Pierce* v. *Fortner*, 64 Ohio App., 544, 29 N. E. (2d), 165, it was held:

"Funds paid into court in a condemnation proceeding and held by the clerk of courts pending further order of the court as to their distribution to the owner of the property are *in custodia legis* and not subject to a creditor's bill, attachment or garnishment proceedings by creditors of such owner."

In that case the court held generally that since no order of distribution had been made in favor of the judgment debtor in the attachment suit, the fund still remained *in custodia legis*.

In *Caton* v. *Kohler*, 69 Ohio App., 455, 44 N. E. (2d), 138, it was held:

"After debts of an estate are paid and an order of distribution has been made of money remaining in the hands of the administrator from the sale of real estate in the estate, such proceeds constitute money due from a person within the meaning of Section 11738, General Code, relating to exemptions, and are not exempt from garnishment prosecuted by a judgment creditor of an heir."

Whether the officer who holds a fund is a public official or an administrator or executor acting under authority of the court, the same fundamental principle has been applied in determining at what time the fund ceases to be *in custodia legis*. In all of the cases cited, the underlying determinative factor on which the decision rested was whether an order of distribution had been made, or whether the court had determined who

was entitled to the fund and had ordered payment thereof.

Applying the fundamental legal principle recognized in the Ohio case law, this court holds that when the Common Pleas Court, on July 25, 1945, found the cash deposit to be the money of this relatrix and ordered it refunded to her, this fund ceased to be *in custodia legis* and was subject to attachment. After the court order was made, the respondent no longer held the fund to serve the purposes of the law, but as agent for Mabel Boller, the relatrix, and became her debtor. The attachment having been made before this action was instituted, the respondent was amenable to the provisions of Section 11829, General Code, which provides as follows:

"The service of process of garnishment upon the sheriff, coroner, clerk, constable, master commissioner, marshal of a municipal corporation, or other officer having in his possession any money, claim, or other property of the defendant, or in which the defendant has an interest, shall bind it from the time of service, and be a legal excuse to such officers, to the extent of the demand of the plaintiff, for not paying such money or delivering such claim or property to the defendant, as by law, or the terms of the process in his hands, he would otherwise be bound to do."

Under the provisions of that section, the respondent is required to hold the fund under the writ of attachment until the writ is released by a court of competent jurisdiction. The service of the writ of attachment became a legal excuse under the provisions of Section 11829, General Code, for the nonpayment of the money to the relatrix.

The writ of mandamus is denied.

*Writ denied.*

HORNBECK, P. J., and MILLER, J., concur.